## MASON CITY & FT. D. R. CO. v. WOLF.

(Circuit Court of Appeals. Eighth Circuit. November 5, 1906.)

No. 2,327.

1. EMINENT DOMAIN—COMPENSATION FOR DAMAGE TO PROPERTY NOT TAKEN—NEBRASKA CONSTITUTION.

Const. Neb. 1875, art. 1, § 21, which provides that "the property of no person shall be taken or damaged for public use without just compensation," as construed by the Supreme Court of the state, entitles a property owner to recover for special injury caused to his property by the construction and operation of a railroad in the vicinity, in excess of that sustained by the public at large, although no part of his own property is actually invaded or appropriated. Such right of recovery includes damage to the property from noise, smoke, cinders, and vibrations of the ground, and the obstruction or impairment of the right of the owner to make use of public highways in the vicinity, which permanently depreciates its value, the measure of recovery being the difference between the market value of the property before the construction and operation of the railroad and its market value afterward; and it is immaterial whether the road is constructed on property condemned or purchased by the railroad company for the purpose, or upon or over public streets or highways under permission granted by the duly constituted public authorities. Damages are not recoverable, however, because of the mere presence upon adjoining property owned by the railroad company of its structures or excavations which do not affect the lateral support of plaintiff's ground.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 233–238.]

2. COURTS—RULES OF DECISION—CONSTRUCTION OF PREVIOUS DECISIONS.

General expressions in the opinion of an appellate court as to recoverable damage are to be taken in connection with the facts of the case in which they occur, and not extended to those cases which are fairly subject to the operation of a different principle.

In Error to the Circuit Court of the United States for the District of Nebraska.

This writ of error challenges a judgment obtained by Tressa Wolf against the railroad company for damages to her property caused by the construction and operation of railroad tracks in the vicinity thereof.

William D. McHugh (Asa G. Briggs, on the brief), for plaintiff in error.

H. C. Brome (A. H. Burnett, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. Upon the plaintiff's lot in Omaha, Neb., were a double dwelling house and a cottage. No part of her property was taken or physically encroached upon by the railroad company, nor was there any proof of negligent construction of its works or operation of its engines and cars. But evidence was received at the trial of injury resulting from a deep excavation made by the company in adjoining lots purchased and owned by it, from the extension of the excavation across the public street upon which plaintiff's lot fronts and

also across the alley that runs in the rear, from the noises of the operation of the road, from smoke and cinders emitted by the engines, and from the vibration of plaintiff's ground caused by the movement of the engines and cars. The excavation was from 20 to 30 feet deep, and at its nearest point it was about 10 feet from plaintiff's property line. The street and alley directly in front and at the rear were not touched, and full and unobstructed use thereof towards the north was not impaired; but on the south, a short distance from the south line of plaintiff's lot, both thoroughfares were permanently destroyed by the excavation, and the company fenced them off to prevent accidents.

At the trial the company, by appropriate objections to the evidence, motions, and requested instructions, sought to have each element of damage claimed excluded from consideration by the jury; but the court admitted all of them, with the qualification, however, that in respect of smoke and the noises of railroad operation there must be an injurious effect upon the value of plaintiff's lot in the mind of a good-faith purchaser, and not a mere personal inconvenience to the occupants. With this explanation the court charged the jury that plaintiff was entitled to recover whatever the evidence showed her lot had depreciated in value by reason of the construction and operation of the railroad in proximity thereto, and that the amount was determinable by the difference between the market value before the road was built and the market value afterwards. It was conceded that the city council of Omaha had granted by ordinance the right of way to the company, and had vacated those portions of the street and alley within the exterior limits of the excavation, and also that the company had contracted to indemnify the city against all damages resulting from the action of the latter. The controlling questions in the case are whether each of the elements of injury above mentioned were proper for the consideration of the jury in the assessment of damages, and whether the trial court in its instructions correctly announced the measure of recovery. The solution of these questions involves a consideration of the fundamental law of the state and the decisions of its highest judicial tribunal.

The Constitution of Nebraska (section 21, art. 1, Const. 1875) provides:

"The property of no person shall be taken or damaged for public use without just compensation."

Gottschalk v. Railroad, 14 Neb. 550, 16 N. W. 475, 17 N. W. 120: In this case the railroad company, acting under municipal authority, constructed its road in an alley in the rear of plaintiff's lot. The court held that the property owner had a cause of action. After referring to the Nebraska Constitution of 1866, which limited the recovery to cases in which property was "taken" for public use, and the enlargement of the right of recovery by the addition of the words "or damaged" in the Constitution of 1875, it said:

"The evident object of the amendment was to afford relief in certain cases where, under our former Constitution, none could be given. It was to grant relief in cases where there was no direct injury to the real estate itself, but some physical disturbance of a right which the owner possesses in connection

with his estate, by reason of which he sustains special injury in respect to such property in excess of that sustained by the public at large. To this extent the property owner is entitled to recover. It is not necessary, to entitle a party to recover, that there should be a direct physical injury to his property, if he has sustained damages in respect to the property itself, whereby its value has been permanently impaired and diminished. This is but justice. While public improvements are essential to progress and to the welfare of the race, yet, as the public are to receive the benefits, whether by the opening of streets and public grounds or by the construction of railways, the party receiving the benefit should bear the burden. This should not be cast upon others."

In support of the conclusions reached the court employed liberal quotations from the case of Rigney v. Chicago, 102 Ill. 64, where, in considering a constitutional provision like that of Nebraska, the Illinois court said:

"But under the present Constitution it is sufficient if there is a direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which by the common law would, in the absence of any constitutional or statutory provisions, give a right of action. * * * The question, then, recurs: What additional class of cases did the framers of the new Constitution intend to provide for which are not embraced in the old? While it is clear that the present Constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old Constitution, yet we think it equally clear that it was not intended to reach every possible injury which is necessarily incident to the ownership of property in towns or cities, which directly impair the value of private property, for which the law does not and never has afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of the neighboring property, yet that is clearly a case of damnum absque injuria. So, as to an obstruction in a public street, if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject, the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present Constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law."

Railroad v. Ingalls, 15 Neb. 125, 16 N. W. 762: Here the railroad was laid upon the side of a country road adjacent to the plaintiff's land, and a recovery by him was sustained against a contention that the railroad merely afforded one of the modes of enjoyment of the public easement and the county commissioners had expressly authorized its construction. There was no especial discussion in the opinion of the constitutional provision or the limitations of its application.

Railroad v. Reinhackle, 15 Neb. 279, 18 N. W. 69, 48 Am. Rep. 342: A railroad company, with leave of the city authorities, laid two tracks upon the east side of a street, upon the opposite side of which the plaintiff's lot abutted. The track near the middle of the street was used as a team track, and was constantly kept nearly filled with cars to be loaded and unloaded. It was held that every lot owner whose lot abutted on the street had a special interest therein distinct from that of the pub-

lic at large, and that the permission of the city authorities to a railroad company to use the street was no defense to an action by an abutting lot owner who suffered special damage from a permanent obstruction. The court also approved of an instruction that the measure of damage was the difference between the market value of the property before the permanent obstruction and the market value afterwards.

City of Omaha v. Kramer, 25 Neb. 489, 41 N. W. 295, 13 Am. St. Rep. 504: The damages claimed in this case were caused by the construction of a viaduct over railroad tracks upon a street upon which plaintiff's lots fronted. The court declined to follow the rule, announced in Penn. R. Co. v. Marchant, 119 Pa. 541, 13 Atl. 690, 4 Am. St. Rep. 659, that under a constitutional provision similar to that of Nebraska there can be no recovery in the absence of "such a legal wrong as would be the subject of an action for damages at common law." Referring to the Nebraska provision, the court added:

"The provision, therefore, is remedial in its nature, and the well-known rule, that in the construction of remedial statutes three points are to be considered, viz., the old law, the mischief, and the remedy, and so to construe the act as to suppress the mischief and advance the remedy, is to be applied. 1 Blackstone, Com. 87. Applying this rule to the provision in question, and it embraces all damages which affect the value of a person's property, and includes cases like that under consideration. In other words, the words 'or damaged,' in section 21, art. 1, of the Constitution, include all actual damages resulting from the exercise of the right of eminent domain which diminish the market value of private property."

It should be said, however, that in support of this conclusion the court cites the Gottschalk Case and Rigney v. Chicago. The court further said:

"The fact that damages are consequential will not preclude a recovery, if the construction and operation of the public improvement is the cause of the injury; and it is not necessary that the damages be caused by trespass or an actual physical invasion of the owner's real estate. The test is: Excluding general benefits, is the property in fact damaged? If so, the owner is entitled to compensation."

In all the cases thus far reviewed the damages were caused by the obstruction of public highways or the operation of railroads therein. In Railroad v. Rogers, 16 Neb. 117, 19 N. W. 603, a railroad company was held liable where it had built its road and occupied all of the lot adjoining the plaintiff's property and had extended its tracks into the street. In these respects the case of Railroad v. Fellers, 16 Neb. 169, 20 N. W. 217, is similar. But in neither of them does it appear that the mere existence of the structures of the railroad company upon its own property, as distinguished from the public thoroughfare, was regarded as affecting the amount of the recoverable damage.

Railroad Co. v. Hazels, 26 Neb. 364, 42 N. W. 93: Hazels was the owner of a half of a block of ground upon the south side of Third street in Pawnee City, Neb. The railroad company acquired by purchase, and not by condemnation, the south half of several blocks of ground upon the opposite side of the street, and constructed various railroad tracks thereon and across the intervening streets. Upon its own ground opposite the land of plaintiff it also constructed a depot, which, with the main and side tracks of the railroad, practically occu-

pied the entire half of the block. The railroad tracks were laid upon a fill rising from the natural grade to about 9 feet above it, with the result that Sherman street, which ran on the east of plaintiff's property, and Sheridan street, on the west, were closed near their intersection with the north line of Third street. The tracks also crossed Grant street a block east of plaintiff's property in a cut about 15 feet deep, over which was constructed a bridge along Grant street. The south approach of the bridge extended into Third street, substantially closing the street at that point. There were other remote obstructions of Third street. The result of all this was that plaintiff's access to his property was limited to Third street westward and Sherman and Sheridan streets southward. Under these conditions the railroad company contended that it was not liable for any injury to plaintiff's property produced by the lawful and proper construction and operation of its railroad on its own land north of Third street; but the Supreme Court of Nebraska rejected the contention, and held that the question was foreclosed by the provision of the state Constitution and the cases to which we have already referred, and among the cases cited is Gottschalk v. Railroad, supra. · It was also urged, doubtless in view of the language of the court in the Kramer Case, that the company was exempt from liability for damages arising from the lawful use of its own property, which it had acquired by purchase, and not by the exercise of eminent domain. As to this the court said:

"It seems to be the contention of plaintiff in error that by the occupation of the lots and parts of blocks he [it] has purchased it is placed upon the same footing as a private owner of property, and therefore has the right to make use of its property as it may see fit, so long as it does not create thereon a public nuisance, and therefore, if an injury was suffered, it is damnum absque injuria. To this we cannot agree. We cannot consent to base defendant's right to recover upon the simple method adopted by plaintiff in procuring its right of way. Had it been anything else than a railroad company, the owner of any single lot along its track could have declined to sell his lot, and thereby prevent its construction; but, owing to the fact that plaintiff was a railroad corporation, this right on the part of the lot owner did not exist. Can it be said, then, that because the lot owners consented to sell their lots the plaintiff could purchase and thus defeat the right of adjoining property owners to maintain their action for damages? Such to our minds would be a novel conclusion."

Again:

"So far as this injury is concerned, it must be conceded that the property of plaintiff has been damaged by the occupation for public use of the streets and adjacent lots; that is, its value to a greater or less extent has been destroyed. This loss must fall upon the owner, unless by the clause of the Constitution referred to he is given an action against the corporation causing it for his damages."

And then, after a consideration of the Gottschalk, Reinhackle, and Fellers Cases, the court added:

"It has been uniformly held by this court that the provision of the Constitution giving compensation to the owner of property damaged for public use shall be given a reasonable and practical construction, and that where property is rendered of less value by the construction of a public improvement of the kind mentioned the owner shall have 'just compensation therefor'. The amount or extent of damage is a question of fact for the jury."

It was also held that it was proper for the jury, in arriving at the depreciation of the value of the property, to consider the effect of smoke, soot, and dust from the engines, the noise from the operation of the road, and the danger to buildings from sparks from the passing engines, although they were not necessarily elements of damage upon which an estimation might be separately based by a jury.

Railroad v. Janecek, 30 Neb. 276, 46 N. W. 478, 27 Am. St. Rep. 399: In this case an unobstructed street intervened between the property of the plaintiff and that which had been purchased and was being occupied by the railroad company with its tracks, engine house, and other structures. No part of the street was encroached upon or molested. The injury to plaintiff's property was alleged to arise solely from the noises made by the ringing of the bells, the sounding of the whistles, the throwing of soot, smoke, and cinders, and the shaking of plaintiff's house by the passing of trains. The court observed that it was the settled law of the state that under the constitutional provision it was not necessary that any part of an individual's property should be actually taken for public use to entitle him to compensation, and that if the property had been depreciated in value by reason of the public improvement, which the owner specially sustained and which was not common to the public at large, a recovery might be had. It was said:

"In the case at bar the plaintiff's property is depreciated in value by the noise caused by the operation of the defendant's engines and cars in front of his premises and in close proximity to his house, by the casting of soot, smoke, and cinders upon his property, and by the vibration of his house. The plaintiff has sustained special damages by the construction and operation of the railroad near his premises, in excess of that sustained by the community at large. Smoke, soot, and cinders are not thown upon property situated a few blocks from the road, nor does the moving of trains jar buildings that are distant from the track."

In Railroad v. Boerner, 34 Neb. 240, 51 N. W. 842, 33 Am. St. Rep. 637, it was held that a property owner was entitled to recover damages caused by the closing of a highway at a point more than 1,000 feet distant from his property.

In Railroad v. O'Connor, 42 Neb. 90, 60 N. W. 326, railroad tracks and a coal house were constructed in a street in front of plaintiff's property, their presence and use so obstructed the street that he was isolated from the enjoyment thereof, and there was much noise and a destructive vibration of his dwelling house.

Railway v. O'Neill, 58 Neb. 239, 78 N. W. 521, was also a case of the obstruction of a street. The Gottschalk Case and Rigney v. Chicago are among the cases cited in the opinion. The court said:

"In such an action the measure of recovery is the difference between the value of the land before and its value after the road was constructed and put in operation."

These decisions seem to answer most of the contentions of the railroad company in the case at bar and to compel the following conclusions:

Permission granted to a railroad company by the duly constituted public authorities to erect its structures and lay its tracks upon a street or other highway does not relieve it from liability to a property owner

for such damage as is within the contemplation of the constitutional provision. It is obvious that a vacation by municipal authorities of a public street and alley for the exclusive benefit of a railroad company cannot afford immunity from liability where a mere grant of the use would not do so. The right of recovery under the state Constitution is not limited to those cases in which the property of a private owner is actually invaded or appropriated by a railroad company. It extends to cases where the value of the property is depreciated by the disturbance of some right, either public or private, which the owner enjoys in connection therewith. It matters not whether the disturbance proceeds from works and operations upon public highways, or from those upon grounds acquired and owned by the company itself; and in the latter case the method of acquisition, whether by purchase or by the exercise of the power of eminent domain, is immaterial. The right of recovery inlcudes damage to the property from noise, smoke, cinders, and vibrations of the ground, and the obstruction or impairment of the right of the owner to make use of public highways in the vicinity. The measure of the recovery is the difference between the market value of the property before the construction and operation of the railroad and its market value afterwards. It should be said, however, that this measure is inapplicable, and an instruction giving it is erroneous, if there is present in the particular case some element of injury for which the plaintiff is not entitled to recover, unless attention is directed to it and a sufficient exception expressed.

In the case at bar the doubtful element in the damages awarded the plaintiff is that arising from the excavation in the property of the railroad company, as distinguished from that in the street and alley. The proof was insufficient to show that the lateral support of plaintiff's ground was in any wise affected, yet witnesses in her behalf testified that their estimates of lessened values were in part based upon the fact that the company had made an excavation upon its own ground, and the trial court declined to instruct the jury to disregard that feature of the case. An excavation upon adjoining property that does not impair the right of plaintiff to lateral support does not disturb her in the use and enjoyment of any right connected with her own land or appurtenant thereto. Nor is such an excavation at all similar, in respect of its relation to her land and its effect upon the same, to disturbances caused by smoke, dust, cinders, noises, and vibrations. The latter sensibly and appreciably affect the physical use and enjoyment of adjoining property, while the mere proximity of an excavation upon the land of another appeals alone to the sentiment in the same sense, though with reverse impression, that a pleasing landscape does.

We do not understand that the Supreme Court of Nebraska has extended the rule of liability under the state Constitution so far as to include supposed damage arising from the bare presence, without more, of works or structures devoted to public use upon neighboring property acquired for that purpose. In every case that has come under our observation there was either an occupation and obstruction to a greater or less degree of a public highway, or a disturbance and annoyance from noise, smoke, etc., or both. And, while it is true that some broad, general expressions as to recoverable damage may be

found in some of the opinions of that court, they are to be taken in connection with the facts of the case in which they occur, and not extended to those cases which are fairly subject to the operation of a different principle. This rule was adopted at an early day by the Supreme Court of Nebraska for its own guidance (McConnell v. Dewey, 5 Neb. 385, 387), and in the national courts it has been regarded as a maxim ever since Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257. In no case brought to our attention has the point been made and decided that the bare presence, without annoying operations, of railroad structures, not upon the highway or other public ground, but upon the property acquired for that purpose, worked a damage to neighboring property owners that was recoverable under the Nebraska Constitution. In that particular a mere excavation for railroad tracks confined to the property of the company stands in the same class. Were it otherwise, municipal corporations would with equal reason be liable in damages to the owners of private property for the establishment of market houses, hospitals, fire engine houses, police stations, and jails. Aside from the disturbances caused by operation, we can perceive of no distinction between structures of the kind just enumerated and railroad tracks and buildings that would permit of recovery of damages in the one case and deny it in the other. The constitutional provision makes no discrimination in respect of the character of the public use. The undesirability of the presence of city jails and the like is generally regarded as being damnum absque injuria in states whose constitutional provisions are like that of Nebraska. Bacon v. Walker, 77 Ga. 336; Van De Vere v. Kansas City, 107 Mo. 83, 17 S. W. 695, 28 Am. St. Rep. 396; Rigney v. Chicago, 102 Ill. 64. See, also, 2 Dillon on Munic. Corp. (4th Ed.) § 587d; 1 Lewis on Eminent Domain (2d Ed.) p. 560.

The excavation of the railroad company upon its own land was a lawful work. It did not encroach upon the property of the plaintiff, nor impair her right of adjacent support. It did not affect to any degree the full use and enjoyment of her property, or any right that was appurtenant thereto. We are of the opinion that it was not a proper element upon which to base the recovery of damages.

The judgment is reversed, and the cause remanded for a new trial.